FILED

JUN 0 5 2017

CLERK, U.S. DISTRICT COURT.
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JULIO TRUJILLO SANTOYO, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil No. 5:16-CV-855-OLG |
| ) | |
| UNITED STATES OF AMERICA et al., ) | |
| ) | |
| *Defendants*. ) | |

## ORDER

This case is before the Court on Defendant Bexar County's Motion to Dismiss the First Amended Complaint (docket no. 13) and Plaintiff's Motion for Partial Summary Judgment (docket no. 22). The Court finds that Defendant's Motion to Dismiss should be GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion for Partial Summary Judgment should be GRANTED IN PART and DENIED IN PART.

### Background

Plaintiff's Complaint asserts claims under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments; claims for declaratory relief under 28 U.S.C. §§ 2201 and 2202; claims for violations of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1226(a) and 1357(a)(2) and (d); and *Bivens* claims arising from Plaintiff's alleged unlawful detention at the Bexar County Adult Detention Center (BCADC) from March 24, 2016, to June 7, 2016. Docket no. 11 at 1 & ¶¶ 54-86. Plaintiff asserts claims against the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), several unknown ICE agents, and Bexar County.

Plaintiff was arrested on January 20, 2016, for misdemeanor assault and placed into custody at BCADC. *Id.* at ¶ 38. At some point during Plaintiff's detention, Defendant ICE agent

Leonard Davis conducted an immigration interview with Plaintiff, concluded that he was a foreign born national, and lodged an immigration detainer with Bexar County. *Id.* at ¶ 39. On March 24, 2016, the assault charge was dismissed, but Plaintiff was not released. *Id.* at ¶ 42. Plaintiff alleges he and his girlfriend inquired, including at least one inquiry in writing, about the reason for his continued detention, and was told that he was being held pursuant to the immigration detainer. *Id.* at ¶¶ 44-46. However, Plaintiff alleges, his girlfriend also contacted ICE directly and was informed that Plaintiff was not on their list to be picked up. *Id.* at ¶ 47. Finally, Plaintiff alleges, on June 7, 2016, he was released from the Bexar County Jail into ICE custody. *Id.* at ¶¶ 34-37.

Although Plaintiff contends that the allegedly unlawful detention resulted from an ICE detainer, Plaintiff's Amended Complaint also incorporates a claim drawn from an affidavit submitted with Defendant's initial Motion to Dismiss, that Plaintiff's detention was prolonged because BCADC did not receive judicial authorization to release him until June 7, 2016. *Id.* at ¶ 50 (citing docket no. 4-1 at ¶ 8). Plaintiff's Amended Complaint thus asserts two Section 1983 claims against Bexar County. The first asserts that Bexar County's practice of honoring ICE detainer requests caused Plaintiff's injuries and violated the Fourth, Fifth, and Fourteenth Amendments. Docket no. 11 at ¶¶ 54-60. The second asserts that Bexar County's policy of detaining individuals in BCADC until receipt of judicial authorization via "facsimile and/or e-mail" (the "judicial authorization policy") was the cause of Plaintiff's injuries and violated the Fourth, Fifth, and Fourteenth Amendments. *Id.* at ¶¶ 61-70. Plaintiff's Amended Complaint also alleges that the ICE detainer issued against him exceeded the statutory authorization for ICE detainers because it was not supported by an individualized determination that he was "likely to escape" and was not convicted of a crime relating to a controlled substance, which Plaintiff contends violated 8 U.S.C. §§ 1226(a) and 1357(a)(2) and (d). *Id.* at ¶¶ 71-76. Plaintiff's

Amended Complaint also seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that ICE detainers violate the Fourth and Fifth Amendments. *Id.* at ¶¶ 77-81. Finally, Plaintiff's Amended Complaint asserts *Bivens* claims against Defendants Lucero and Davis, who are, respectively, the Director of the San Antonio ICE field office and the ICE officer who issued the detainer request against Plaintiff. Plaintiff alleges that Defendant Davis inaccurately represented to Defendant Bexar County that ICE had a final order for removal of Plaintiff at the time that the January 20, 2016 detainer request was issued. *Id.* at ¶¶ 39-40, 85. Plaintiff alleges that Defendant Lucero is responsible for implementing "policies, customs and practices, including . . . deliberately indifferent failure to establish adequate procedures, supervision and training [which] caused the Plaintiff's injuries and the violations of the Fourth and Fifth Amendments." *Id.* at ¶¶ 82-83.

Defendant Bexar County has moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, for summary judgment pursuant to Fed. R. Civ. P. 56. Docket no. 13 at ¶¶ 1, 3. Plaintiff has moved for partial summary judgment against Defendant Bexar County as to its Section 1983 claims. Docket no. 22.

## Legal Standards and Analysis

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and Rule 12(b)(6) provides that a complaint may be dismissed if it "fails to state a claim upon which relief can be granted[.]" Courts apply these rules through the two-pronged process outlined by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, the Court must identify the complaint's factual allegations, which are assumed to be true, and distinguish them from any statements of legal conclusion, which are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678, 680-81. Second, the Court must assess whether the assumed-as-true factual allegations set forth a plausible claim to relief. This is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to determine whether "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct[.]" *Iqbal*, 556 U.S. at 679. Ultimately, the claim is subject to dismissal if it lacks "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint" and may also consider "matters of which a court may take judicial notice[,]" including pleadings and court proceedings in state court that are public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *330 Cedron Trust v. Citimortgage, Inc.*, No. SA-14-CV-933-XR, 2015 WL 1566058, at *2 (W.D. Tex. Apr. 8, 2015). If the Court considers other materials, it must treat the motion as one for summary judgment under Fed. R. Civ. P. 56, and must afford the parties a reasonable opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d).

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact," and once the movant has met this burden, the nonmovant must "go beyond the pleadings" and designate specific facts, supported by summary judgment evidence, showing that there is a genuine need for trial. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

In the context of a claim under 42 U.S.C. § 1983, "a municipality cannot be held vicariously liable for the constitutional torts of its employees or agents"; rather, "[a] municipality is liable only for acts directly attributable to it through some official action or imprimatur." *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). Thus, to establish municipal liability under Section 1983, a plaintiff must plead and prove three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle*, 613 F.3d at 541-42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

In its motion to dismiss, Defendant Bexar County argues that Plaintiff has failed to adequately plead the existence of a Bexar County custom or policy that caused the alleged deprivation of Plaintiff's constitutional rights. Docket no. 13 at ¶ 4. Defendant also argues that Plaintiff's claims regarding the sufficiency of the detainer should be dismissed because the record shows that probable cause existed to believe that Plaintiff had committed a federal crime—illegal reentry into the United States after removal. *Id.* at ¶ 8. Defendant also argues that Plaintiff's Amended Complaint fails to establish that its policy of honoring ICE detainers by detaining inmates for up to 48 hours was the "moving force" behind Plaintiff's challenged 75 day detention. *Id.* at ¶ 9. Finally, Defendant argues that its judicial authorization policy is constitutional and was not the moving force behind Plaintiff's alleged constitutional deprivations. *Id.* at ¶¶ 11-13. Defendant's motion is submitted pursuant to Fed. R. Civ. P. 12(b)(6), but also seeks as an alternative summary judgment pursuant to Fed. R. Civ. P. 56. *Id.* at ¶¶ 1, 3.

In response, Plaintiff argues that his Amended Complaint sufficiently pleads his Section 1983 claims. Plaintiff contends that he has satisfied the first two elements of a sufficient Section 1983 pleading because "he identified, and the Defendant concedes, two detention policies about

which the Defendant's policymakers are aware." Docket no. 15 at 6. Plaintiff further contends that he has made a sufficient pleading that the judicial authorization policy was the moving force behind his allegedly unlawful detention because Defendant has not disputed his claim that "they continued to hold him in custody until after his charges were dismissed until . . . they received a facsimile or e-mail from the court." *Id.* at 7. Plaintiff also argues that dismissal of his Section 1983 claims at this stage would be inappropriate because a fact question exists regarding whether his allegedly unlawful 76-day detention was the result of the ICE detainer or the judicial authorization policy. *Id.* at 15, 17.

In his motion seeking partial summary judgment, Plaintiff contends that Defendant Bexar County has conceded that its continued detention of Plaintiff after the entry of the order dismissing the assault charge against him was "pursuant to two policies"—both the practice of honoring ICE detainer requests and the judicial authorization policy. Docket no. 22 at 3, 5 (arguing that "[i]n the course of these proceedings, the Defendants conceded the existence of policies that were the moving force behind [Plaintiff's] unlawful imprisonment."). In his motion, Plaintiff identifies the pertinent policymaker as the Bexar County Sheriff and argues that evidence not in dispute shows the Sheriff's knowledge of both the ICE detainer policy and the judicial authorization policy. *Id.* at 7-8. Plaintiff then argues that both policies were the moving forces behind his allegedly unlawful 76-day detention. *Id.* at 9-15.

In its Response, Defendant Bexar County argues that Plaintiff is not entitled to summary judgment because he has not shown that either of the challenged policies are facially unconstitutional or "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." Docket no. 23 at ¶ 4 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). Defendant further argues that Plaintiff has failed to show that the alleged deprivation of his rights was pursuant to the challenged policies

because he has shown the existence of "persistent, widespread practices that could constitute policies for purposes of § 1983 actions" or that any such policy was adopted or continued "in deliberate indifference to the constitutional rights" of the County's residents. *Id.* at ¶ 5 (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)). Defendant also disputes the sufficiency of Plaintiff's showing of actual or constructive knowledge, arguing that the knowledge of certain Bexar County officials—such as an Assistant District Attorney or the Bexar County Clerk—that the charges against Plaintiff had been dismissed as of March 24, 2016, cannot fairly be imputed to the County. *Id.* at ¶ 7.

The parties' filings effectively amount to cross-motions for summary judgment on Plaintiff's Section 1983 claims against Defendant Bexar County. The Court accordingly analyzes them together, and considers each required element of a sufficient Section 1983 pleading in turn. First, the Court considers whether a genuine question of fact exists regarding the existence of an official policy or custom. Defendant does not dispute that it maintains a policy of holding BCADC detainees until receipt of written judicial authorization for their release. With respect to the County's practice of honoring ICE detainer requests, Defendant relies upon *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995), and argues that Plaintiff has failed to state the existence of a policy because he has failed to show the impact of any purported policy on anyone other than himself. Docket nos. 13 at ¶ 9; 23 at ¶ 5. However, establishing the existence of a custom by producing evidence of its application to other individuals is only one way of satisfying the first element to show municipal Section 1983 liability. *See, e.g., Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) ("practices of officials may become 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" (quoting *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978))). A more straightforward method to satisfy this element is to establish that "the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the policymaker." *Monell*, 436 U.S. at 690. The existence of a "policy" can also be established by evidence of "formal rules and understandings" or "fixed plans of action to be followed under similar circumstances consistently and over time." *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir. 1993) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)). Moreover, the first requirement of municipal Section 1983 liability can even be satisfied by a single action of a municipal official who possesses policymaking authority regarding the action in question, such as a county Sheriff. *Brady v. Fort Bend County*, 145 F.3d 691, 698 (5th Cir. 1998); *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990) (in Texas, a sheriff wields final policymaking authority in the county regarding law enforcement). In this case, Plaintiff has presented evidence that, as of April 2016, under former Bexar County Sheriff Susan Pamerleau, the County "complied with all [ICE detainer] requests[,]" except in situations where inmates subject to a detainer request were transferred to other facilities or jurisdictions, or where the 48-hour detainer period expired before federal authorities picked up the detainee. Docket no. 22-1. Sheriff Pamerleau also described the County's practices for handling ICE detainer requests in March 23, 2016, testimony before the Texas Senate Subcommittee on Border Security, testimony which is cited by both parties and which is available online at http://tlcsenate.granicus.com/MediaPlayer.php?view_id=40&clip_id=10949. Defendant acknowledges the County's practice of honoring ICE detainer requests, a practice premised, according to Defendant, on the "assumption that all individuals on ICE detainers are individuals that have committed a felony offense or multiple misdemeanor offenses." Docket no. 17 at ¶ 6 & n.9 (citing Sheriff Pamerleau's testimony at 3:05:42). This evidence is sufficient to establish the existence of a Bexar County policy of honoring ICE detainer requests, and to satisfy the first element of municipal Section 1983 liability. No evidence in the record creates any fact issue

regarding the County's practice of honoring ICE detainer requests, and of assuming that such requests are based on the subject's commission of a felony or multiple misdemeanors.

This evidence also satisfies the second element of municipal Section 1983 liability, showing that the Bexar County Sheriff—the official policymaker for purposes of law enforcement, *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996)—had actual knowledge of the County's practice of honoring ICE detainer requests. The parties' arguments regarding whether knowledge that Plaintiff was detained for more than 48 hours after entry of the order dismissing the charges against him can be imputed to the County are misplaced. The second element of municipal Section 1983 liability is whether the municipal entity can be charged with knowledge of the custom or practice at issue, not the constitutional deprivation alleged to result from it. *Valle*, 613 F.3d at 542. Defendant does not dispute the County's knowledge of the judicial authorization policy, and has produced no evidence that creates any fact issue regarding whether the Sheriff had knowledge regarding the ICE detainer request compliance policy.

The final element of municipal Section 1983 liability is whether the evidence shows that the challenged policy was the "moving force" behind the alleged constitutional deprivation. The Court considers this inquiry first with respect to the County's policy of honoring ICE detainer requests. Plaintiff alleges that the entirety of his 76-day detention that followed the dismissal of the criminal charge resulted from the County's compliance with the ICE detainer request. He has produced evidence showing that, when he asked jail officials why he was being detained after the charge against him had been dismissed, he was informed that it was because of the ICE detainer request. Docket no. 22-1 at 4-5; 19, 23-24. However, evidence not in dispute shows that such a prolonged detention based on an ICE detainer request would be contrary to both the County's practice regarding ICE detainer requests and the detainer request itself. Docket no. 22-1 at 8 (Sheriff Pamerleau statement, quoting news article, that inmates would be released, and the

detainer request "declined," if "federal authorities failed to pick [the detainee] up within 48 hours"), 11 (ICE detainer request for Plaintiff, requesting that the County "[s]erve a copy of this form on the subject and maintain custody of him/her for a period <u>NOT TO EXCEED 48 HOURS</u>"); *see also* 8 C.F.R. § 287.7(d) (authorizing detention pursuant to detainer requests "for a period not to exceed 48 hours"). Accordingly, Plaintiff's evidence shows that the County's practice of honoring ICE detainer requests was not the "moving force" behind his allegedly unconstitutional detention, because if jail officials did in fact detain him for more than 48 hours based on the ICE detainer request, they did so in violation of, rather than pursuant to, County practice. To the extent that Plaintiff alleges that the County's policy or practice was to detain individuals beyond 48 hours, or indefinitely, upon receipt of an ICE detainer request, summary judgment in Defendant's favor is appropriate because Plaintiff has not presented evidence that any such policy was ever adopted by a policymaking authority, that any such practice was carried out with respect to any individual other than Plaintiff himself, or that any policymaker was involved in the post-dismissal detention of Plaintiff for more than 48 hours based on receipt of the ICE detainer request.

Plaintiff also contends that the County's compliance with ICE detainer requests, even for periods of 48 hours or less, is unconstitutional. Docket nos. 15 at 14; 22 at 14. Plaintiff argues that Bexar County's practice is to honor ICE detainer requests without making any independent assessment of whether the prolonged detention is supported by probable cause that a crime has been committed, or whether the detainer otherwise complies with the INA's statutory guidelines. Plaintiff argues that this practice establishes the County's liability for violating his rights to due process and to be secure from unreasonable seizure. Docket nos. 15 at 10-13; 22 at 11-14. Plaintiff further argues that the specific detainer request of which he was a subject was unsupported by probable cause that he had committed an offense within the enforcement power

of state officials, as opposed to the federal offense of illegal reentry into the United States after removal. Docket no. 15 at 13-14. Plaintiff therefore contends that any period of post-dismissal detention based upon the ICE detainer request was therefore a violation of his Fourth, Fifth, and Fourteenth Amendment rights, for which the County is liable.

As discussed above, evidence not in dispute establishes that Bexar County maintains a policy of honoring ICE detainer requests, and assumes that any subject of an ICE detainer request has been determined by ICE to have committed a felony or multiple misdemeanors. Docket no. 17 at ¶ 6. Plaintiff is correct that detention pursuant to an ICE detainer request is a Fourth Amendment seizure that must be supported by probable cause or a warrant. *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 2509 (2012); *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) ("Because [the detainee] was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes—one that must be supported by a new probable cause justification."); *Cervantez v. Whitfield*, 776 F.2d 556, 560 (5th Cir. 1985) (reciting stipulation). Furthermore, the Supreme Court has recently observed that "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States" and that "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona v. United States*, 567 U.S. 387, 132 S.Ct. 2492, 2505 (2012); *see also Santos v. Frederick County Bd. of Com'rs*, 725 F.3d 451, 464 (4th Cir. 2013) ("the [Supreme] Court has said [in *Arizona*] that local officers generally lack authority to arrest individuals suspected of civil immigration violations."); *Mercado v. Dallas County, Texas*, 3:15-CV-3481-D, 2016 WL 3166306, at *7 (N.D. Tex. June 7, 2016) (discussing *Arizona* and *Santos*).

Defendants contend that the detainer of which Plaintiff was the subject was based not only on Plaintiff's alleged removability, but on his alleged commission of a federal criminal

offense: unlawful reentry of the United States following removal, in violation of 8 U.S.C. § 1326(a). Docket no. 13 at ¶ 8. However, no evidence in the record indicates that information about Plaintiff's criminal violation of Section 1326(a) was available to County authorities at the time that they determined to prolong his detention in response to the ICE detainer request. Accordingly, the record is devoid of evidence showing that County officials' detention of Plaintiff pursuant to the ICE detainer request was supported by any County official's probable cause that he had committed a criminal offense. Defendant's argument that probable cause is established on the basis of the ICE removal order that has been submitted to the Court is unavailing. The probable cause determination turns on information available to officers at the time of the challenged search or seizure, not information subsequently submitted to the Court. *See, e.g., United States v. Woolery*, 670 F.2d 513, 515 (5th Cir. 1982) (probable cause is assessed according to "the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information"). Notably, the ICE removal order describing Plaintiff's illegal reentry violation is dated June 8, 2016—the day after Plaintiff's detention at BCACD ended. Docket no. 22-1 at 21. It is therefore irrelevant to the question of whether County officials had probable cause to detain Plaintiff pursuant to the ICE detainer.

Defendant suggests that County officials were entitled to rely upon ICE's probable cause determination. The Court does not agree. First, as discussed below, ICE's assessment of probable cause was based on a determination that Plaintiff was likely removable, not that he had likely committed a criminal offense. The Court also notes that, even if the probable cause requirements between County officials and 8 U.S.C. § 1357(d)(1) were interchangeable, the "collective knowledge doctrine" would not apply in this case because the record does not indicate any communication or cooperation between the ICE personnel who made the probable cause determination and the County officials who processed the detainer request. Indeed, the record

does not reveal the identity of any individual within ICE to reached the probable cause determination, the information that formed the basis for that determination, or when it was reached. *Compare United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013) ("The collective knowledge theory for reasonable suspicion applies so long as there is 'some degree of communication' between the acting officer and the officer who has knowledge of the necessary facts."); *United States v. Ibarra*, 493 F.3d 526, 531 (5th Cir. 2007) (probable cause imputed through collective knowledge theory where "Agent Smith knew all of the facts giving rise to the probable cause to search the trailer, and there was communication between Agent Smith, Lieutenant Rawls, and Trooper McGuairt regarding the investigation of this trailer.").

The unlawful detention of Plaintiff as a result of the ICE detainer request illustrates the broader defects in the County's practice. To establish municipal liability, Plaintiff must show that the County's practice is either facially unconstitutional or "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997)). Defendant's policy of honoring ICE detainer requests and of assuming the existence of probable cause based on the existence of a detainer request meets this standard of deliberate indifference. An obvious consequence of Defendant's practice is that individuals who are the subjects of ICE detainers will be detained by County officials who make no assessment, and have no knowledge, regarding whether probable cause exists that those individuals have committed any crime. In her testimony before a subcommittee of the Texas legislature, Sheriff Pamerleau correctly observes that, under DHS's Priority Enforcement Program (PEP),[1] DHS prioritized the removal of individuals convicted of

---

[1] DHS's PEP guidelines were in effect throughout the duration of Plaintiff's allegedly unlawful detention. Subsequent to the period relevant to this case, the PEP guidelines were

certain criminal offenses, a departure from the more permissive standards for issuance of detainer requests under the previous Secure Communities program. Nonetheless, even under the PEP guidelines, undocumented immigrants may be prioritized for removal even though they are not suspected or convicted of a criminal offense, such as those "who, in the judgment of an ICE Field Office Director, USCIS District Director, or USCIS Service Center Director, have significantly abused the visa or visa waiver programs," or "who have been issued a final order of removal on or after January 1, 2014."[2] Memorandum from DHS Secretary Jeh Johnson on Policies for the Apprehension, Detention and Removal of Undocumented Immigrants (Nov. 20, 2014), *available at* https://www.dhs.gov/sites/default/files/publications/14_1120_memo_prosecutorial_discretion.pdf. And of course, the PEP guidelines establish DHS enforcement priorities, but do not prohibit the issuance of detainers for non-prioritized undocumented immigrants. *See id.* at 5 ("Nothing in this memorandum should be construed to prohibit or discourage the apprehension, detention, or removal of aliens unlawfully in the United States who are not identified as priorities herein."). And more fundamentally, the fact of a prior conviction does not establish probable cause supporting a new Fourth Amendment seizure, so the designation of an undocumented immigrant as a PEP enforcement priority on that basis cannot be assumed sufficient to satisfy the probable cause requirement for warrantless detention by state or local officials. It is true that the immigration detainer form developed for use with the PEP program—the DHS Form I-247D—includes a section in which ICE selects from a series of

---

rescinded by DHS. *See* Memorandum from DHS Secretary John Kelly on Enforcement of the Immigration Laws to Serve the National Interest (Feb. 20, 2017), *available at* https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Enforcement-of-the-Immigration-Laws-to-Serve-the-National-Interest.pdf. The record does not reflect whether Bexar County's policy of honoring all detainer requests has also been revised.

[2] As noted above, "it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 2505 (2012) (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984)).

boxes to inform County officials of the basis for "probable cause," but crucially, this refers not to probable cause to believe that a crime has been committed, but to believe that "the subject is a removable alien."[3] The immigration detainer form of which Plaintiff was the subject indicated that probable cause existed to believe that he was a removable alien based on "a final order of removal against the subject." Docket no. 22-1. But, as noted above, neither the mere removability of an individual nor the entry of a final removal order against them equates to a showing of probable cause that they have committed a crime. *Arizona*, 132 S. Ct. at 2505; *Orellana v. Nobles County*, CV 15-3852 ADM/SER, 2017 WL 72397, at *8 (D. Minn. Jan. 6, 2017) (noting that "'reason to believe [that a detainee] is an alien subject to removal from the United States' does not, without more, provide the probable cause needed to make a lawful arrest. . . . because, '[a]s a general rule, it is not a crime for a removable alien to remain present in the United States.'" (quoting *Arizona*)). In short, the County's assumption that probable cause must exist to detain any individual for whom it receives an ICE detainer request was unreasonable. Its routine detention of such individuals made it inevitable that it would engage in warrantless detention of individuals who were not suspected of any criminal offense, but who became the subjects of ICE detainer requests either because they fell within a non-criminal PEP enforcement priority or because a detainer request was lodged despite their non-priority status. In

---

[3] This distinction also explains why cases that reconcile federal authorities' warrantless detention authority under 8 U.S.C. § 1357(d) with the Fourth Amendment are not controlling. *See, e.g., United States v. Varkonyi*, 645 F.2d 453, 458 (5th Cir. Unit A May 1981) ("the phrase 'reason to believe' [in 8 U.S.C. § 1357(a)(2)] has been equated with the constitutional requirement of probable cause"); *Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015) (same); *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) (same). Those cases have all drawn an equivalence between probable cause and the statutory "reason to believe" standard governing issuance of detainer requests within the context of claims against federal agents. In this case, faced with claims against Bexar County, the Court must examine the detention in question was supported by probable cause to believe that a crime had been committed, not by probable cause (or reason to believe) that "the alien may not have been lawfully admitted to the United States or otherwise is not lawfully present in the United States[.]" 8 U.S.C. § 1357(d)(1).

other words, facts not in dispute show that the County's practice was carried out with deliberate indifference to the constitutional violations that would inevitably flow from it.

Plaintiff's arguments that the detainer request in this case exceeded the statutory authority for such requests may be relevant to Plaintiff's claims against ICE,[4] but they are not relevant to Plaintiff's claims against the County, and are therefore not addressed here. Plaintiff's claim against the County turns on the question of whether, as a result of honoring the ICE detainer request, County officials detained Plaintiff without probable cause. As discussed above, Plaintiff's Section 1983 claim that is premised on the ICE detainer involves, at most, a 48 hour span during his 76-day post-dismissal detention. However, no evidence in the record suggests that the County's detention of Plaintiff during that period was supported by probable cause that Plaintiff had committed any crime, state or federal.[5] The Court therefore concludes that Plaintiff is entitled to partial summary judgment on this claim.[6]

The Court now turns to Plaintiff's Section 1983 claim challenging the County's judicial authorization policy. The Court agrees with Defendant that Plaintiff has failed to show that this policy is either facially unconstitutional or deliberately indifferent to any certain-to-follow constitutional deprivation. *Piotrowski*, 237 F.3d at 579. Moreover, Plaintiff has failed to plead

---

[4] Nonetheless, the Court notes at this juncture that, contrary to Plaintiff's arguments, 8 U.S.C. § 1357(d), authorizing the "[d]etainer of aliens for violations of controlled substances laws[,]" supplies an alternative basis for use of detainers in cases where "an alien . . . is arrested by a Federal, State, or local law enforcement official for a violation of any law relating to controlled substances," but does not require that all warrantless ICE detainers—particularly those with separate statutory bases such as Section 1357(a)(2)—relate to a controlled substance offense.

[5] It is therefore not necessary for the Court to reach Plaintiff's argument that federal law would preempt state officials from detaining an individual based on probable cause of only a federal crime. Docket no. 22 at 12.

[6] However, the Court agrees with Defendant that Plaintiff's claims against the County for Fifth Amendment violations cannot proceed because "the Fifth Amendment applies only to the actions of the federal government." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

more than an isolated violation of a constitutionally protected interest: He has not pleaded or submitted evidence showing that the County's policy was the moving force behind the failure to transmit judicial authorization for his release, or that the County's policy resulted in other individuals suffering deprivations similar to his. Thus, although Plaintiff has shown the existence of a policy, the policymaker's knowledge of that policy, and the existence of a constitutional deprivation, he has not shown that the policy he challenges was the moving force behind the constitutional deprivation. The record does not disclose the source of the error that caused Plaintiff's detention to continue after the dismissal of the charge against him: It is possible that personnel at the court failed to transmit the dismissal order to the jail, or that personnel at the jail failed to acknowledge receipt of the dismissal order. In either event, however, such an error would not be attributable to the County's judicial authorization policy. *Campbell*, 43 F.3d at 977. The Court is also not persuaded by Plaintiff's argument that some County officials' knowledge of the dismissal order should be attributed to personnel at the jail. There is no evidence that any of the individuals who Plaintiff speculates knew of the dismissal order also had knowledge of Plaintiff's continued detention, and none of those are individuals "whose edicts or acts may fairly be said to represent official policy[.]" *Compare Monell*, 436 U.S. at 694. Furthermore, accepting Plaintiff's argument, and holding the County liable because some of its employees knew of the dismissal order while others knew that Plaintiff remained in detention after the date of the dismissal order's entry, would amount to a finding of municipal liability on a respondeat superior theory—a result contrary to Section 1983. *Monell*, 436 U.S. 690-91.

The Court therefore concludes that, as to Plaintiff's Section 1983 claim that is premised on the County's judicial authorization policy, summary judgment is appropriate for Defendant.

## Conclusion and Order

The Court finds that Defendant's Motion to Dismiss (docket no. 13) presented to the Court materials outside the pleadings, alternatively sought summary judgment pursuant to Fed. R. Civ. P. 56, and that both parties to these motions were afforded notice of the alternative summary judgment request and have been provided a reasonable opportunity to present all material that is pertinent to the motion. The Court therefore treats the motion as one for summary judgment under Fed. R. Civ. P. 56, pursuant to Fed. R. Civ. P. 12(d).

The Court concludes that facts not in dispute show that Defendant Bexar County's policy of honoring ICE detainer requests was the moving force behind violations of Plaintiff's Fourth and Fourteenth Amendment rights, which resulted in the unlawful detention of Plaintiff for a period of up to 48 hours. The Court therefore concludes that Plaintiff is entitled to partial summary judgment on the issue of liability.

As to Plaintiff's 42 U.S.C. § 1983 claim relating to the County's policy of requiring receipt of judicial authorization by e-mail or facsimile before releasing a detainee, the Court concludes that facts not in dispute show that the policy was not the moving force behind the alleged violations of Plaintiff's Fourth and Fourteenth Amendment rights. The Court therefore concludes that Defendant is entitled to summary judgment as to that claim.

It is therefore ORDERED that Defendant's motion seeking summary judgment (docket no. 13) is GRANTED IN PART as to Plaintiff's second claim for relief, set forth in paragraphs 61-70 of his First Amended Complaint, and DENIED IN PART as to all other claims;

It is further ORDERED that Plaintiff's Motion for Partial Summary Judgment (docket no. 22) is GRANTED IN PART as to Plaintiff's first claim for relief, set forth at paragraphs 54-60 of Plaintiff's First Amended Complaint, and DENIED IN PART as to all other claims;

It is further ORDERED that Plaintiff's Motion for Leave to File a Surreply (docket no. 19) is GRANTED; and

It is further ORDERED that Defendant's Motion to Dismiss (docket no. 4) is DENIED AS MOOT.

SIGNED this 5 day of June, 2017.

ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE